IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Antonio D. Parker, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | 1:13cv927 (AJT/MSN) |
| ) | |
| Aimee Scott Loren, et al., ) | |
|     Defendants. ) | |

<u>MEMORANDUM OPINION</u>

Antonio D. Parker, a Virginia inmate proceeding <u>pro se</u>, has filed a civil rights action pursuant to 42 U.S.C. § 1983, arising out of his May 21, 2012 arrest in the city of Fredericksburg, Virginia. The sole remaining claim in this action is that one of the two remaining defendants, Officer Ryan Merrell and Sergeant Dana Nielsen, used excessive force against plaintiff during his arrest. Defendants have filed a Motion for Summary Judgment, a memorandum of law and affidavits to support their motion, and have provided plaintiff the notice required by Local Civil Rule 7(K) and <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). Dkts. 60, 61. Plaintiff has submitted a response to the defendants' Motion, to which the defendants filed a reply. Dkts. 62, 63. For the reasons that follow, the claim against defendant Nielsen will be dismissed, and defendant Merrell's Motion for Summary Judgment will be granted.

**I. Factual Background**

On the evening of May 21, 2012, plaintiff was supposed to pick up his girlfriend, Bryana Stewart, at an apartment she had shared with her sister, Victoria Pruitt, prior to her relationship with plainitff. <u>See</u> Am. Compl. [Dkt. 12], "Statement of Claim," at VI. After several hours of trying to get in touch with Bryana and visiting the apartment, plaintiff got into bed for the night at approximately 9:00 p.m. <u>See id.</u> at VI-VI1. Bryana called him at this time, so he drove to the

apartment to meet her. Plaintiff learned at this time that Bryana and Victoria had been arguing, apparently about the relationship between Bryana and plaintiff. However, plaintiff did not yet know the subject of the argument. Id. at VI1.

At approximately 10:00 p.m., plaintiff knocked on Victoria's door. When Victoria did not answer, plaintiff started to walk away to a friend's house, due to the existence of a neighborhood curfew preventing anyone from being outside between sunset and sunrise. Id. at VI1-VI2. Victoria then came to the door and argued with plaintiff about his relationship with Bryana for approximately two minutes. Unbeknownst to plaintiff, Victoria "had already called the police when she seen [him] on arrival" to make a "false and reckless" 911 call. She informed the operator that she did not know plaintiff, that plaintiff "threatened to break out all [her] windows" and hurt her children, that plaintiff banged on the door, and that plaintiff was talking to himself and behaving erratically. Id. at VI2. Victoria also allegedly told police that she thought plaintiff's name was Antonio Parker. Id. Plaintiff states that Victoria spoke with plaintiff as a way to "stall" him until the police arrived. Id.

After arguing with Victoria, plaintiff walked away to go a friend's house to wait for Bryana. As he was walking between two parked cars, he saw a police car approaching. A white male officer got out of the car and approached plaintiff with a weapon drawn. Id. at VI3. The officer immediately fired his taser at plaintiff "without commands," despite the fact that plaintiff's hands were raised. Id. In response to plaintiff's inquiries about the reasons behind the use of the taser, the officer responded: "Shut up or I fucking [sic] taser you again." Id. at VI5. The officer then shot plaintiff with the taser a second time, for approximately twenty-five seconds, before pinning plaintiff to the ground and handcuffing him. Id. The officer also "yanked the [taser] prongs out [of plaintiff's body,] tearing flesh." Id. Plaintiff was then placed in the back of a

police car and the officer quickly drove away. Id.

Plaintiff believes that Victoria's 911 call "caused the officer to become atrocious (visious) [sic] and aggressive before he arrived[,] [because he] thought [he] had an unstable suspect . . . ." Id. at VI3.[1] Plaintiff has alleged that the officer involved in his arrest was defendant Merrell. See, e.g., Plaintiff's Response to Defendants' Motion for Summary Judgment ("Pl.'s Resp.") [Dkt. 62], at 2.[2]

However, both Merrell and Nielsen aver that they did not participate in plaintiff's arrest. Nielsen arrived on the scene after plaintiff had been arrested, and did not have any interaction with plaintiff. Defendants' Memorandum in Support of their Motion for Summary Judgment ("Defs.' Mem.") [Dkt. 61], Ex. 2 (Nielsen Aff.) ¶ 2. Merrell, although he was on duty on May 21, 2012, was not dispatched to assist in plaintiff's arrest. He thus did not have any interaction with the plaintiff on the night of his arrest. Defs.' Mem., Ex. 1 (Merrell Aff.) ¶ 2.

## II. Procedural History

Plaintiff initially brought claims for excessive force, malicious prosecution, and false arrest. He also initially sought to hold David Nye, Chief of the Fredericksburg Police Department; the City of Fredericksburg; several additional police officers; the Commonwealth's Attorney; Victoria Pruitt; and several other private citizens liable as defendants. The Court sent waivers of service to defendants Nielsen and Merrell on March 10, 2014, and dismissed all other claims against all other defendants. Since then, the plaintiff has filed a Motion to Amend his complaint, which the Court denied on June 16, 2014. Dkt. 52. The Court also denied plaintiff's

---

[1] Although plaintiff has made numerous other factual allegations, the remaining facts are not relevant to the instant motion, and the Court therefore does not need to recite them here.

[2] Sergeant Nielsen was also served in this action due to plaintiff's previous contention that the officer in question could have been either Merrell or Nielsen. See Plaintiff's Response to December 20, 2013 Order [Dkt. 16], at 4.

3

numerous requests for the Court to amend its Orders and allow service on other defendants and for additional claims. See, e.g., Dkts. 52, 59. Accordingly, at this stage of the litigation, Nielsen and Merrell are the only remaining defendants, and plaintiff's excessive force claim is the only remaining claim.

### III. Defendant Nielsen

The parties agree that defendant Nielsen should be dismissed from this action. It is undisputed that Nielsen was not present at the scene of plaintiff's arrest, and therefore did not have any interaction or physical contact with plaintiff. See Defs.' Mem., Ex. 2 ¶¶ 2-3. In addition, plaintiff has stated numerous times that Nielsen should no longer be a defendant in this action. See, e.g., Pl.'s Resp., at 4 ("Officer R. Merrell should be the only defendant in this action . . . ."); Plaintiff's Mem. in Supp. of his Mot. to Sustain Defendants Acting under Color in Violation of § 1983 Fed. R. Civ. P. 8(a)(2) ("Pl.'s Mem.") [Dkt. 35], at 14 ("If the court can when possible Nielsen . . . mabe [sic] dismissed."). Accordingly, the claim against Nielsen will be dismissed.

### IV. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment as a matter of law is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

4

The nonmoving party must present some evidence, other than its initial pleadings, to show that there is more than just a "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Celotex, 477 U.S. at 324 (quoting Rule 56(e) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by [other evidence] designate 'specific facts showing that there is a genuine issue for trial.'"). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Therefore, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587.

### V. Analysis

Summary judgment in favor of defendant Merrell is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that he did not use excessive force against plaintiff. To the extent that any disputes of fact exist, these disputes are not material, and do not preclude the entry of summary judgment in favor of the defendant.

### A.   Defendant Merrell Played No Personal Role in the Complained-Of Conduct

It is undisputed that, despite plaintiff's allegations to the contrary, Officer Merrell was not involved in plaintiff's arrest.  Plaintiff states that the arresting officer wore badge number 338, see, e.g., Am. Compl., at VI3, and identified this officer as a "John Doe" defendant throughout his complaint and amended complaint.  In response to this Court's Order requesting the name of the arresting officer, plaintiff provided the names of both Merrell and Nielsen on January 14, 2014, stating that the officer could have been "either" Merrell or Nielsen.  Plaintiff's Response to December 20, 2013 Order, at 2.  Plaintiff states that he "had an investigating friend go to the police . . . department and verify who wears or is (badge number unit number #338)[.]  The plaintiff's friend confirmed that Officer Merrell is this badge number unit number at the time of plaintiffs [sic] arrest . . . ."  Pl.'s Mem., at 14.  However, plaintiff does not provide any additional evidence to support his claim that defendant Merrell wears badge number 338.

In contrast, Officer Merrell states in his affidavit supporting his Motion for Summary Judgment that he was not present at plaintiff's arrest and had no knowledge of the incident at the time it occurred.  Defs.' Mem., Ex. 1 ¶ 2.  In response, plaintiff states that the number on the car of the officer who arrested him was 338.  Pl.'s Resp., at 1.  However, a party opposing a Motion for Summary Judgment must present some degree of probative evidence, other than mere allegations, in order to defeat the motion.  See Anderson, 477 U.S. at 248-49 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  To meet this burden, the nonmoving party must present more than just the allegations stated in his initial pleadings, see Celotex, 477 U.S. at 324, and must provide evidence that is more than "merely colorable," Anderson, 477 U.S. at 249 (internal citations omitted).  In addition, the nonmoving party cannot "create a genuine issue of material fact through mere speculation or the building of one inference

6

upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (internal citations omitted). Because plaintiff has provided no evidence, other than his own statements, that officer number 338 is actually defendant Merrell, he has failed to establish that a genuine dispute of material fact exists as to whether Merrell was actually the arresting officer. Accordingly, Merrell's statement that he did not participate in plaintiff's arrest is undisputed, and that Merrell did not use any degree of force on plaintiff. Merrell's Motion for Summary Judgment must therefore be granted.

### B. Excessive Force Was Not Used

Moreover, it is apparent at this juncture that allowing plaintiff an additional opportunity to amend his complaint to provide the name of the arresting officer would be futile, because the evidence establishes that the arresting officer did not use excessive force against plaintiff. When analyzing a claim for excessive force, a court must first determine the specific constitutional right claimed to have been violated. Graham v. Connor, 490 U.S. 386, 394 (1989) (internal citations omitted). When an excessive force claim arises in the context of a custodial arrest, such as here, it is governed by the Fourth Amendment. Id.; see also Martin v. Gentile, 849 F.2d 863, 868 (4th Cir. 1988) ("[T]he [F]ourth [A]mendment's prohibition against unreasonable seizures protects . . . against the use of excessive force in making arrests . . . ."). In this context, the test for determining whether the Fourth Amendment has been violated requires looking at the reasonableness of the use of force. See Graham, 490 U.S. at 394; Vathekan v. Prince George's County, 154 F.3d 173, 178 (4th Cir. 1998). The reasonableness of the use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).

In addition, the analysis of whether a particular use of force was reasonable is "wholly objective" and does not take into account the arresting officer's "subjective intent or motivation."

7

Martin, 849 F.2d at 869 (quoting Scott v. United States, 463 U.S. 128, 137-38 (1977) (Rehnquist, J., concurring)). To assess the objective reasonableness of the force used, a court must look at the salient events "in full context, with an eye toward the proportionality of the force in light of all the circumstances." Thomas v. Robinson, No. 1:04-cv-1145-LMB, 2005 WL 5714146 at * 4 (E.D. Va. Dec. 5, 2005) (Brinkema, J.) (quoting Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994)), aff'd, 192 F. App'x 209 (4th Cir. 2006). This analysis must also take into account "the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force necessary in a particular situation." Graham, 490 U.S. at 397.

Here, the evidence shows that the use of force in tasing plaintiff was not unreasonable. The officer who responded to Victoria Pruitt's 911 call knew only the information that Victoria had communicated to the 911 dispatcher. Accordingly, the officer was aware that Victoria believed that an unstable individual was outside her home, threatening to break down her door, and was potentially able to harm her children. When the officer arrived, he observed plaintiff emerge from behind two parked cars at approximately 10:00 p.m. in a high-crime area with a nighttime curfew. Plaintiff himself states that the officer could not see him clearly due to the darkness and the parked cars. Am. Compl., at IV3. Therefore, at the time that the officer arrived, he had reason to believe that plaintiff was a threat to the safety of Victoria and the entire neighborhood, and had no way of definitively observing plaintiff's actions or whether he had a weapon. Even if in hindsight, the use of the taser might not have been necessary, the officer's conduct was far from objectively unreasonable, due to the extent of the potential threat that he perceived. In short, the officer faced an uncertain situation with the potential to evolve into something more threatening, and acted in response. See Graham, 490 U.S. at 397.

Plaintiff concedes that Ms. Pruitt's 911 call likely contributed to the officer's decision to use force, but contends that this call, standing alone, was not sufficient to justify the use of force. See Am. Compl., at VI3. Plaintiff correctly states that the responding officer was required to consider the "totality of the circumstances" before using force. See id.; see also Tennessee v. Garner, 471 U.S. 1, 8-9 (1985). When responding to the 911 call, however, the arresting officer had only the information provided to him by the 911 dispatcher. Unlike plaintiff, he did not know that Victoria's accusations false, and did not know that plaintiff was only present on the property to pick up his girlfriend. As the use of force "must be judged from the perspective of a reasonable officer on the scene," Graham, 490 U.S. at 396, the only facts relevant to the analysis are those facing the arresting officer. Based on those facts, the officer's use of force was reasonable.

### VI. Conclusion

For the foregoing reasons, the claims against defendant Nielsen will be dismissed, and defendant Merrell's Motion for Summary Judgment will be granted. An appropriate Judgment and Order shall issue.

Entered this 16 day of June 2015.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge

9